United States District Court
Southern District of Texas
**ENTERED**
January 28, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **DUNG VAN NGUYEN,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 5:25-CV-176** |
| | § | |
| **KRISTI NOEM, *et al.*,** | § | |
| | § | |
| **Respondents.** | § | |

**MEMORANDUM & ORDER**

Pending before the Court is Petitioner Dung Van Nguyen's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. Petitioner was born in Vietnam during the Vietnam war. (Dkt. 25 at 1.) He and his family fled the country when he was seventeen years old, and he arrived in the United States as a lawful permanent resident in 1989. (*Id.* at 1, 7.) He was later convicted of several criminal offenses, and an immigration judge ordered him removed in 2001. (*Id.* at 1.) However, because Vietnam refused to accept individuals who had left the country prior to 1995 as refugees, his deportation could not be executed, and Mr. Nguyen was released. (*Id.*) Nearly twenty-four years later, after complying with all supervision requirements, Petitioner was rearrested without notice by ICE in June of 2025. (*Id.*) He has remained in custody for more than six months since and has filed this habeas action seeking release. (*See* Dkts. 1, 25.) Having considered the parties' filings and the applicable law, the Court concludes that Petitioner's redetention and ongoing detention violate his due process rights, and thus, immediate release is required.

Accordingly, the Petition for Writ of Habeas Corpus is GRANTED IN PART. Respondents are ORDERED to release Petitioner from custody on or before **January 30, 2026**, on the terms of

his former Order of Supervision. The Parties must notify the Court of the status of Petitioner's release by **5 P.M. Central Standard Time (CST) on February 2, 2026**.

## Background

### A. Mr. Nguyen's Immigration History

Petitioner Dung Van Nguyen ("Petitioner" or "Mr. Nguyen") is a fifty-four-year-old native of Vietnam. (Dkt. 25 at 7; Dkt. 10 at 2.) Mr. Nguyen also states that he is a citizen of Vietnam, although he claims that Vietnam has refused to recognize him as such. (*See* Dkt. 25 at 7; Dkt. 10 at 2, Attach. 1.)[1] Mr. Nguyen entered the United States as a lawful permanent resident when he was seventeen years old on or about August 4, 1989, at the Seattle, Washington Port of Entry. (Dkt. 25 at 7; Dkt. 10 at 2.) He had a number of criminal convictions from 1994 through 2000 including possession of a controlled substance, theft of less than $300, and carrying a concealed weapon. (Dkt. 25 at 7; Dkt. 10 at 2.)

On March 6, 2000, the Immigration and Naturalization Services ("INS") issued Mr. Nguyen an I-862 Notice to Appear and placed him in removal proceedings. (Dkt. 25 at 7–8.) Mr. Nguyen was taken into INS custody on November 29, 2000, and denied a bond by an immigration judge ("IJ"). (Dkt. 25 at 7; Dkt. 10 at 2.). He was ordered removed to Vietnam on August 20, 2001, by an IJ and the order became final on September 20, 2001, when he did not appeal the decision. (Dkt. 25 at 7; Dkt. 10 at 2–3.)

Mr. Nguyen continued to be detained by INS for another 165 days in post-final order detention as INS sought to remove him to Vietnam but was unable to do so. (Dkt. 25 at 7.) Prior to 2020, Vietnam generally refused to repatriate individuals who were born in the country but left

[1] The Court will use "Attachment" to refer to sub-filings in accordance with official docket entries. The Court will use the page numbers auto-generated by CM/ECF in citations to the docket entries.

before 1995 as refugees. (*Id.*); *see also Nguyen v. Hyde*, 788 F. Supp. 3d 144, 148 (D. Mass. 2025) (describing the Memorandum of Understanding signed by the United States and Vietnam in 2020 seeking to establish a process for beginning repatriation of pre-1995 arrivals). On March 4, 2002, Mr. Nguyen was released from INS custody on an Order of Supervision ("OSUP") when immigration authorities were unable to obtain travel documents from his native Vietnam. (Dkt. 25 at 8.) Since then, Mr. Nguyen has resided in the United States for the last twenty-four years and complied with all supervision requirements imposed by INS (later, the Department of Homeland Security ("DHS")). (*Id.*)

**B. Apprehension and Redetention by ICE**

On June 12, 2025, Mr. Nguyen was arrested by Homeland Security Investigation ("HSI") officers without notice and placed in Immigration and Customs Enforcement ("ICE") custody in Laurel City, Maryland. (Dkt. 25 at 8; Dkt. 10 at 3.) He was transferred to the Webb County Detention Center in Laredo, Texas on June 15, 2025, where he remains in ICE custody. (Dkt. 25 at 8; Dkt. 10 at 3.)

Mr. Nguyen filed the instant action seeking a writ of habeas corpus under 28 U.S.C. § 2241. (Dkt. 1.) At the time of his initial filing, Petitioner represented himself *pro se* before the Court. (*Id.*) Respondents filed a timely response to the Petition on October 29, 2025. (Dkt. 10.) Respondents alleged that Mr. Nguyen's petition was premature, because he had not yet been in custody for more than six months since his arrest in June of 2025. (*See id.* at 4.) Respondents also alleged that Mr. Nguyen's continued detention was authorized because he had been uncooperative in completing a passport application for Vietnam that was provided to him on October 10, 2025, four months after he had been apprehended and placed in custody. (*See id.* at 5) (citing 8 C.F.R. 241.4(g)(1)(ii) ("the removal period is extended under section 241(a)(1)(C) of the Act if the alien

fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.”)).

The Court subsequently held a status conference with the parties on November 25, 2025, to inquire into Petitioner’s eligibility for appointment of counsel under the Criminal Justice Act (“CJA”) and to ascertain whether Petitioner had completed the application or intended to cooperate with ICE’s attempts to secure travel documents to Vietnam for him. (*See* Dkts. 13, 16; Min. Entry for Nov. 25, 2025.) The Court declined to appoint counsel based on Petitioner’s representation that he intended to hire a private attorney and that he intended to complete the passport application to the best of his ability in the near future. (Min. Entry for Nov. 25, 2025.) The Court also ordered Respondents to file an Advisory with the Court regarding Petitioner’s cooperation in completing the passport application documents, which Respondents timely filed on December 12, 2025, stating that Petitioner had not completed the passport application documents as of that date. (*Id.*; Dkts. 16, 19.)

Mr. Nguyen retained counsel in this matter, (Dkt. 18), and the Court set a briefing schedule to supplement the record. (Dkt 20.) Following an extension request by Petitioner’s counsel, the Court extended the briefing schedule deadlines and ordered Petitioner to respond to Respondents’ Motion for Summary Judgment, (Dkt. 10), no later than January 6, 2026. (Dkt. 22.) In that briefing schedule, the Court also provided Respondents an opportunity to reply to Petitioner by January 13, 2026, and an additional opportunity for Petitioner to respond by January 20, 2026. (*Id.*)

On January 6, 2026, Petitioner timely filed his Reply Memorandum in Support of Petition for Writ of Habeas Corpus and Opposition to Respondent’s Motion for Summary Judgment. (Dkt. 23.) Petitioner also simultaneously filed pursuant to Rule 15(a)(2) of the Federal Rules of Civil

Procedure for leave to file leave to amend his petition, (Dkt. 24), and submitted his First Amended Petition for Writ of Habeas Corpus, (Dkt. 25). Respondents elected not to file any response to Petitioner's Reply Memorandum, motion for leave, or amended petition by the January 13, 2026, deadline, and did not seek leave from the Court for an extension of the filing deadline or file any opposition prior to the final deadline of January 20, 2026, for all briefing in the case. As such, the Court relies on Respondent's Response to Petitioner's Writ of Habeas Corpus and Motion for Summary Judgment dated October 29, 2025, as its operative motion. (Dkt. 10.)

**C. Mr. Nguyen's Claims**

In his amended petition, Mr. Nguyen asserts three claims for relief. (Dkt. 25 at 9–13.) First, he claims that his detention violates 8 U.S.C. § 1231(a) of the Immigration and Nationality Act ("INA") as interpreted through *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*Id.* at 9.) Second, he claims that his detention has become indefinite in violation of the Due Process Clause of the Fifth Amendment because his removal is not reasonably foreseeable. (*Id.* at 9–10.) Finally, he brings a claim under the *Accardi* doctrine, alleging that DHS violated 8 C.F.R. § 241.4(*l*) when it redetained him, despite his OSUP, without any explanation of the legal or factual basis for redetention. (*Id.* at 10.)

Mr. Nguyen asks the Court to grant declaratory and injunctive relief and order his immediate release from immigration detention on his former OSUP. (*Id.* at 12.) He also requests that the Court prohibit his removal to any country other than Vietnam without review by an Immigration Judge. (*Id.*) Additionally, Mr. Nguyen acknowledged that he did not comply with completing the Vietnam passport application, (*see* Dkt. 19), because he did not understand the form that he was provided on October 10, 2025, as his primary language is Vietnamese. (Dkt. 23 at 2; Dkt. 25 at 8.) He confirmed that he was eventually able to complete the application after he

retained outside counsel and submitted the form on December 22, 2025. (Dkt 23 at 2; Dkt. 25 at 8.)

Mr. Nguyen has now been in ICE custody for over six months since June of 2025. (Dkt. 25 at 9.) Specifically, Mr. Nguyen has spent 208 days in ICE custody since his rearrest on June 12, 2025, and a total of 373 days in post-final order of removal detention including the time he was detained after being ordered removal in 2001. (*Id.*) In that time, ICE has been unable to secure a travel document from Vietnam or demonstrate any progress to the Court in doing so. (*See* Dkts. 10, 19; Min. Entry Nov. 25, 2025.) DHS has not provided a date by which it believes it can remove Mr. Nguyen to Vietnam, nor or any information indicating that it intends to pursue removal of Mr. Nguyen to a country other than Vietnam in the future.

## Legal Standards

### A. 28 U.S.C. § 2241

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Section § 2241(c)(3) authorizes "any person to claim in federal court that he or she is being held 'in custody in violation of the Constitution or laws. . . of the United States.'" *Zadvydas*, 533 U.S. at 687. Accordingly, § 2241 confers jurisdiction upon the federal courts to hear challenges to the lawfulness of immigration-related detention. *Id.* (citing 28 U.S.C. § 2241(c)(3)); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Baez v. Bureau of Immigr. & Customs Enf't*, 150 F. App'x 311, 312 (5th Cir. 2005) (unpublished); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) (unpublished).

Habeas is "the basic method for obtaining review of continued *custody after* a deportation order had become final" and is available "as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas*, 533 U.S. at 687 (citation omitted). "Whether a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal is determinative of whether the detention is, or is not, pursuant to statutory authority. The basic federal habeas corpus statute grants the federal courts authority to answer that question." *Id.* at 699 (citing 28 U.S.C. § 2241(c)(3)).

Moreover, a Court is not required to hold a hearing when the habeas petition "raises only questions of law, or questions regarding the legal implications of undisputed facts." *Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (citations omitted); *see also Trejo v. Warden of ERO El Paso E. Montana*, 2025 WL 2992187, at *2 (W.D. Tex. Oct. 24, 2025) (citation omitted).

**B. 28 U.S.C. § 1331**

The Court also has federal question jurisdiction, through the Administrative Procedure Act ("APA"), to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). APA review of a final agency action may proceed, absent a special statutory review proceeding, by "any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction." 5 U.S.C. § 703.

**C. Rule 56(a)**

Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Rogers v. Bromac Title Servs., L.L.C.,* 755 F.3d 347, 350 (5th Cir. 2014). If the moving party meets its burden of demonstrating the absence of a genuine factual dispute, the non-movant must then come forward

with specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). “A dispute is ‘genuine’ if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party,” and a “fact issue is ‘material’ if its resolution could affect the outcome of the action.” *Canady v. Davis*, 687 F. App’x 362, 365 (5th Cir. 2017) (quoting *Ramirez v. Martinez*, 716 F.3d 369, 374 (5th Cir. 2013)). “Because this case arises in a summary judgment posture, we view the facts in the light most favorable to [Petitioner], the nonmoving party.” *Id.* (quoting *City & County of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1769 (2015)).

## Discussion

The Court considers Mr. Nguyen’s claims that his redetention in June of 2025 and ongoing detention since violate the INA and his due process rights, in additional to his claim that ICE violated its regulations when it redetained him without any explanation of the legal or factual basis for redetention. (*See* Dkt. 25.) Respondents argue that Petitioner’s claims are not ripe because they were brought prior to the elapse of six months after Mr. Nguyen was redetained, and that Mr. Nguyen’s earlier failure to complete a passport application for Vietnam authorized the extension of his post-removal-period detention. (*See* Dkt. 10.) The Court addresses each of these arguments in turn after first addressing Petitioner’s pending motion for leave and examining its jurisdiction.

### A. Petitioner’s Rule 15(a)(2) Motion

Petitioner sought leave pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure to amend his petition, (Dkt. 24), and concurrently submitted his First Amended Petition for Writ of Habeas Corpus, (Dkt. 25), on January 6, 2026. As a response had already been filed to Petitioner’s initial *pro se* petition, (Dkt. 1.), Respondents oppose granting leave. (Dkt. 24 at 2.) However, Respondents have filed no response, opposition, nor motion for leave with the Court as

of the date of this Order despite the Court's prior Order, (Dkt. 22), setting a deadline of January 13, 2026, for Respondent's responsive filings.

"The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Rule 15 evinces a bias in favor of granting leave to amend." *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003) (quotation omitted). "In deciding whether to grant leave to file an amended pleading, the district court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

Petitioner seeks leave to amend his initial petition that was filed *pro se* to clarify his claims before the Court now that he has retained counsel and to present an additional good faith claim. (*See* Dkts. 20, 21, 22, 24, 25.) Moreover, respondents have failed to respond to the motion for leave or the amended petition despite the Court's deadline for Respondent's responsive filings. Therefore, in an exercise of discretion and for good cause shown, leave is hereby GRANTED for Petitioner to amend his petition for a writ of habeas corpus. Having granted leave, the Court will consider Petitioner's First Amended Petition for Writ of Habeas Corpus, (Dkt. 25), to be the operative petition before the Court.

**B. Subject Matter Jurisdiction**

The Court now turns to its jurisdiction to review Petitioner's claims. The primary federal habeas corpus statute confers federal subject-matter jurisdiction over habeas petitions filed by noncitizens who claim they are being detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Zadvydas,* 533 U.S. at 687. However, the REAL ID Act of 2005 divested federal courts of jurisdiction over various important categories of

immigration cases. *See* Pub. L. No. 109-13, Div. B, 119 Stat. 231 (2005); *codified as* 8 U.S.C. § 1252. Specifically, district courts may not review challenges to final orders of removal, the Attorney General's discretionary judgment to detain a noncitizen, or questions of law and fact "arising from any action taken or proceeding brought to remove an alien from the United States." *See* 8 U.S.C. §§ 1252(a)(5), (b)(9), (e); *Texas v. United States*, 126 F.4th 392, 417 (5th Cir. 2025); *Moreira v. Mukasey*, 509 F.3d 709, 712 (5th Cir. 2007). Additionally, no federal court may review claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g).

But the Supreme Court has recognized a distinction between challenges to individual, discretionary detention decisions—which are prohibited—and "challenges to the statutory framework that permits [an] alien's detention without bail"—which remain cognizable under the habeas statute. *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (internal alterations omitted) (citing *Demore v. Kim*, 538 U.S. 510, 516 (2003)). Moreover, the Supreme Court has rejected a broad reading of these provisions, cautioning that that "[i]nterpreting 'arising from' in this extreme way would also make claims of prolonged detention effectively unreviewable." *Id.* at 293. Therefore, federal courts retain "jurisdiction to review [a noncitizen's] detention insofar as that detention presents constitutional issues," *Oyelude,* 125 F. App'x at 546; *see also Nielsen v. Preap,* 586 U.S. 392, 401–02 (2019); *Maldonado v. Macias*, 150 F. Supp. 3d 788, 794 (W.D. Tex. 2015) ("[E]ven after the passage of the REAL ID Act, district courts retain the power to hear statutory and constitutional challenges to civil immigration detention under § 2241 when those claims do not challenge a final order of removal, but instead challenge the detention itself.").

Moreover, "Section 1252(g) does not bar courts from reviewing an alien detention order, because such an order, 'while intimately related to efforts to deport, is not itself a decision to

'execute removal orders' and thus does not implicate section 1252(g).'" *Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000) (citation omitted); *see also Sagastizado v. Noem* (*Sagastizado I*), 802 F. Supp. 3d 992, 1005 (S.D. Tex. 2025). Likewise, "where review of an agency determination involves neither a determination as to the validity of the [petitioner's] deportation order[] or the review of any question of law or fact arising from their deportation proceedings, § 1252(a)(5) and (b)(9) should not operate as a bar to the district court's review." *Duarte v. Mayorkas*, 27 F.4th 1044, 1056 (5th Cir. 2022).

Mr. Nguyen contests only his post-removal-period detention while DHS attempts to remove him to Vietnam rather than any aspect of his underlying removal order or the decision by DHS to execute it. Thus, his claim is not barred, and the Court retains jurisdiction to review his detention.

**C. Limits on Post-Removal-Period Detention**

Mr. Nguyen argues that his detention violates his due process rights and the INA because there is no significant likelihood of his removal in the reasonably foreseeable future as Mr. Nguyen was ordered removed in 2001 and DHS provides no reason to believe that circumstances have changed. (S*ee* Dkt. 25.)

Pursuant to § 1231, once an IJ issues a removal order and that order becomes "final," the Attorney General has ninety days to affect the detainee's departure from the United States. *See* 8 U.S.C. § 1231(a)(1)(A); *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006) *cert. denied*, 549 U.S. 1132 (2007). The beginning of the removal period is calculated to be the latest of "(i) The date the order of removal becomes administratively final. (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order. (iii) If the alien is detained or confined (except under an immigration process), the date the alien

is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B). In general, during this 90-day removal period, the detainee must remain detained. 8 U.S.C. § 1231(a)(2). The period is tolled and extended only if "the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). If the detainee is not removed within that 90-day period, he may become eligible for supervised release until removal can be accomplished or DHS may continue to detain him for "a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 385 (2005); 8 U.S.C § 1231(a)(3).

Even so, all post-removal-period detention must comport with constitutional limits. The Supreme Court has recognized that "permitting indefinite detention of an alien would raise a serious constitutional problem" and that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas,* 533 U.S. at 690. Thus, the Supreme Court held in *Zadvydas* that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Id.* at 699. Therefore, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* (citations omitted).

In order to guide lower courts reviewing the reasonableness of continued detention, the Supreme Court determined that there is a presumably reasonable period of six months of detention from the time that a removal order becomes final.[2] *Id.* at 701. After six months have elapsed, once

[2] Courts, including this one, have understood the six-month presumption to be a period of 180 days which comports with DHS's post-removal custody review procedures. *See Sanchez v. Noem* (*Sagastizado II*)*,* 2025 WL 3760317, at *8 (S.D. Tex. Nov. 14, 2025); 8 C.F.R. § 241.4(k)(2)(ii).

a noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the respondents do not offer sufficient rebuttal evidence once a habeas petitioner has made such a showing, then the court should grant the writ and order the habeas petitioner released under the *Zadvydas* framework. *See id.*; *but see Andrade*, 459 F.3d at 543–44 (finding that petitioner had failed to meet his initial burden when he offered "nothing beyond [his] conclusory statements").

Respondents contend that both Petitioner's redetention by immigration authorities in June of 2025 and his continuing detention since are lawful. (Dkt. 10) They argue that (1) Petitioner's claims are not ripe because they were brought prior to the elapse of the six months since he was redetained in June of 2025, and (2) Petitioner's earlier failure to complete a passport application document for Vietnam authorized the extension of his post-removal-period detention. (*Id.*)

**1. Length of Petitioner's Detention**

In their motion, Respondents first argue that Petitioner's claims are not ripe because they were brought prior to the elapse of six months after Mr. Nguyen was redetained in June of 2025. (*See* Dkt. 10 at 4–5.) Although Respondents are correct that Mr. Nguyen was not in custody for six months from the date of his redetention in June of 2025 at the time his petition was initially filed, Mr. Nguyen has now clearly been detained for more than six months since his rearrest. In any case, there is no bar on filing a habeas petition prior to the six-month mark. *See Sagastizado II*, 2025 WL 3760317, at *7 n.3 (noting that there is no "controlling precedent or legal support to indicate that six months must have elapsed *at the time of filing*" and concluding that the six-month period is a rebuttable not preclusive presumption); *see also Villanueva v. Tate*, 801 F. Supp. 3d

689, 702 (S.D. Tex. 2025) ("[N]othing in *Zadvydas* precludes a challenge to detention before the presumptively constitutional time period has elapsed").

Furthermore, Respondents do not provide a convincing reason for the Court to conclude that the six-month period for presumably reasonable detention under *Zadvydas* has been tolled or reset in Mr. Nguyen's case. Mr. Nguyen's removal order became final on September 20, 2001. (Dkt. 10, Attach. 1.) The 90-day removal period authorized by statute would have expired on December 19, 2001. Respondents offer no indication that circumstances have changed which justify a reset of the presumption for reasonable detention. Besides, there is nothing in the relevant statutory language to suggest that the removal period restarts or resets automatically with another arrest or subsequent redetention, and neither *Zadvydas* nor other Fifth Circuit cases direct the Court to treat the six-month presumption of reasonableness in this manner. To adopt such reading would allow for what is, in essence, indefinite detention in successive intervals. *See Nguyen v. Scott*, 796 F. Supp. 3d 703, 722 (W.D. Wash. 2025) ("'[s]urely, under the reasoning of *Zadvydas*, a series of releases and redetentions by the government . . . while technically not in violation of the presumptively reasonable jurisprudential six month removal period, in essence results in an indefinite period of detention, albeit executed in successive six month intervals.'" (quoting *Chen v. Holder*, 2015 WL 13236635, at *2 (W.D. La. Nov. 20, 2015)); *see also Sagastizado II*, 2025 WL 3760317, at *8 ("While the Supreme Court in *Zadvydas* set six months as a reasonable time period of detention in which the Government can be presumed to be working to effectuate removal in good faith, that presumption does not reset at the time a noncitizen is redetained after being released on an order of supervision during which time the Government could have been taking steps to effectuate the noncitizen's removal."); *Tadros v. Noem*, 2025 WL 1678501, at *3 (D.N.J. June 13, 2025) ("To the contrary, Tadros argues his final order of removal triggered the six-month

detention period under *Zadvydas*, and thus lapsed long ago. . . .Tadros has the better argument under *Zadvydas*."); *Zavvar v. Scott*, 2025 WL 2592543 (D. Md. Sept. 8, 2025) ("*Zadvydas* contemplated only the situation in which a noncitizen was continuously detained from the issuance of the removal order while efforts to execute the removal were ongoing . . . and did not directly address the situation presented here, where a noncitizen was not detained upon the issuance of the removal order, remained on release for over 17 years, and only then was subjected to post-removal order detention for the first time."). Thus, the Court concludes that there is no reason to reset the presumption for reasonable detention, and Mr. Nguyen's statutory and constitutional claims are ripe for adjudication.

In addition to arguing that Mr. Nguyen's claims are not ripe, Respondents argue that the statutory period for detention is extended because, at the time of their motion, Mr. Nguyen had not "ma[d]e a timely application in good faith for travel or other documents necessary to the alien's departure[.]" (Dkt. 10 at 5); 8 C.F.R. 241.4(g)(1)(ii); *see also* 8 U.S.C. § 1231(a)(1)(C). Mr. Nguyen has since submitted documents required to obtain a passport for Vietnam, and over a month has passed with no update on the government's progress in removing him. (Dkt. 23 at 2; Dkt. 25 at 8.) Additionally, "the government must demonstrate a lack of cooperation by clear and convincing evidence to justify extended detention." *Glushchenko v. United States Dep't of Homeland Sec.*, 566 F. Supp. 3d 693, 709 (W.D. Tex. 2021). First, Mr. Nguyen was not provided with the passport application until four months had already elapsed since he was redetained. (Dkt. 23 at 2; Dkt. 25 at 8.) Second, in his initial petition, he requested that his removal be effectuated without delay if it would allow for his release from detention and later explained to the Court that the reason for his failure to complete the application was due to confusion rather than an intentional lack of cooperation. (*See* Dkt. 1 at 3.) ("I requested my removal to Vietnam as soon as possible,

or that ICE release me from detention and grant me permission to reside in the United States."); (*see also* Min. Entry for Nov. 25, 2025.) Mr. Nguyen's short delay in completing paperwork due to a language barrier and inability to recall information is not fatal to his *Zadvydas* claim. *See e.g. Ghasedi v. Wamsley*, 2025 WL 3699705, at *6 (W.D. Wash. Dec. 1, 2025), *report and recommendation adopted*, 2025 WL 3697208 (W.D. Wash. Dec. 19, 2025) ("Ghasedi's alleged noncooperation, even if true, does not rise to the level of dooming his *Zadvydas* claim."). And moreover, Respondents have now been in possession of the completed paperwork for more than a month, further mitigating any delay caused by Mr. Nguyen's prior failure to complete the travel forms.

Therefore, having long surpassed the six-month presumption of reasonableness under *Zadvydas*, and finding no basis to further extend the statutory removal period, the analysis shifts to whether Mr. Nguyen's removal is foreseeable at present.

**2. Foreseeability of Petitioner's Removal**

The Court now turns to the foreseeability of Mr. Nguyen's removal. Under a traditional *Zadvydas* framework, the noncitizen bears the initial burden to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Zadvydas*, 533 U.S. at 701. Only after such a showing does the burden shift to the government to rebut it. *Id.* Petitioner argues that the burden should be placed on the government in the case of redetention after release, noting that several district courts have taken this position because the government typically bears the burden for justifying its revocation of a release on an OSUP. (Dkt. 23 at 4–6); *see Nguyen*, 788 F. Supp. 3d at 149 (This case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in *Zadvydas*. This case is about ICE's authority to *re-detain* Mr. Nguyen after he was issued a final order of removal, detained, and

subsequently released on an OSUP."); *Escalante v. Noem*, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("These regulations clearly indicate, upon revocation of supervised release, it is the Service's burden to show a significant likelihood that the alien may be removed.") Finding this reasoning persuasive, the Court arrives at the same conclusion that the burden for demonstrating a significant likelihood of removal in the reasonably foreseeable future should be placed on the government because the government must demonstrate some changed circumstances that justify redetention.

In Mr. Nguyen's case, Respondents have submitted no evidence whatsoever to the Court indicating any change in circumstances that makes Mr. Nguyen's removal more likely today than it has been at any other moment over the past twenty-four years that he has lived in the United States subject to a final order of removal. Consequently, Respondents have clearly failed to meet their burden. And even applying a traditional *Zadvydas* framework, Mr. Nguyen has provided the Court with a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Mr. Nguyen has submitted that Vietnam, his only country of nationality, has declined to accept him for removal since 2001 and that the United Staes and Vietnam have a strained diplomatic relationship. (Dkt. 23 at 6.) Furthermore, he asserts that he has not received any communication from the Vietnamese consulate since his detention. (Dkt. 25, Attach 1 at ¶ 19). Finally, Petitioner has shown that he was released previously on an Order of Supervision, which generally occurs when the government determines that removal is not likely, to any country. *See* 8 U.S.C. § 1231(a)(3); *see also* 8 C.F.R. § 241.13(g)(1) (if the Service concludes "there is no significant likelihood that the alien will be removed in the reasonably foreseeable future," they shall then make arrangements for release.)

Thus, Mr. Nguyen has provided a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, and Respondents have provided nothing indicating that removal is any more foreseeable today than it was in 2001.[3] Respondents have had years to work on effectuating Mr. Nguyen's removal while he remained on his OSUP and more than six months since his most recent arrest and redetention to continue their efforts. The lack of any progress demonstrated towards removal while Mr. Nguyen has remained detained is reason enough to believe that his removal is not reasonably foreseeable under even the most generous understanding of the standard. *See Misirbekov v. Venegas,* 2025 WL 3033732, at *2 (S.D. Tex. Oct. 29, 2025) (finding that a "lack of progress in removing Petitioner makes removal unlikely in the foreseeable future" for a petitioner detained over nine months post-removal). "A remote possibility of an eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future." *Balouch v. Bondi*, 2025 WL 2871914, at *3 (E.D. Tex. Oct. 9, 2025) (citation omitted). The constitution forbids such an infringement on liberty.

Thus, Mr. Nguyen's continuing detention violates the INA and his rights under the Due Process Clause because there is no significant likelihood of his removal in the reasonably foreseeable future.

**D. Federal Regulations for Revocation of OSUP**

Finally, Mr. Nguyen alleges that ICE violated the relevant federal regulations when it redetained him despite his OSUP without any explanation of the legal or factual basis for

[3] The Court acknowledges that there have been changes in the diplomatic relationship between the United States and Vietnam since 2001 that could affect the general likelihood for the removal of Vietnamese nationals, but at no point have Respondents raised or provided any evidence of an individualized change in Mr. Nguyen's likelihood of removal despite an opportunity to do so. *C.f. Nguyen v. Bondi*, 2025 WL 3120516, at *7 (W.D. Tex. Nov. 7, 2025) (discussing and collecting cases pertaining to the likelihood of removal of pre-1995 Vietnamese refugees).

redetention. (Dkt. 25 at 10.) Consequently, Mr. Nguyen asks the Court to order that he be immediately released from detention on the terms of his former OSUP. (*Id.* at 12.)

If a noncitizen with a final order of removal is not removed within a 90-day period, he may become eligible for supervised release until removal can be accomplished. *Zadvydas*, 533 U.S. at 689; *see also Clark*, 543 U.S. at 385; 8 U.S.C § 1231(a)(3). A noncitizen is released from post-order detention on an Order of Supervision (OSUP). 8 C.F.R. §§ 241.4(j), 241.5(a). For revocation of an OSUP, the custody review procedures in 8 C.F.R. § 241.13 apply to a noncitizen under a final order of removal when there has been a determination that there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future. 8 C.F.R. § 241.13(a), (b)(1). Under this section an OSUP can be revoked if the conditions of release are violated, or for removal purposes. 8 C.F.R. § 241.13(i). But to revoke an OSUP for the purposes of removal, ICE must first demonstrate changed circumstances. 8 C.F.R. § 241.13(i)(2). ("The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future.")

If ICE can demonstrate that because of a change of circumstances, there is a significant likelihood that the alien may be removed in the reasonably foreseeable future to the country to which the alien was ordered removed or to a third country, then procedures in 8 C.F.R. § 241.4 apply. 8 C.F.R. § 241.4(b)(4); *see also Martinez v. Hyde*, 2025 WL 3719656, at *1–2 (D. Mass. Dec. 23, 2025) (describing the differences in the two sections). Under this section, the OSUP may also be revoked where the noncitizen "violates the conditions of release." 8 C.F.R. § 241.4(*l*)(1). But the government must still explain the reason for the revocation and the noncitizen must be

provided with an opportunity to respond. 8 C.F.R. § 241.4(*l*)(1) ("Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."). Additionally, the regulation also allows for redetention, when "[i]t is appropriate to enforce a removal order." 8 C.F.R. § 241.4(*l*)(2)(iii). But absent a specific violation of the conditions of release, only designated, high-level ICE officials are authorized to revoke an OSUP (including for the purpose of effectuating removal), namely the Executive Associate Commissioner. 8 C.F.R. 241.4(*l*)(2).

Mr. Nguyen argues that he was not afforded the processes under either the relevant regulations for the revocation of his OSUP. He argues that Respondents have failed to outline any changes in circumstances indicating a significant likelihood of removal that would have justified his rearrest and ongoing detention, in violation of 8 C.F.R. § 241.13(i)(2). (Dkt. 25 at 10–13.) Additionally, he argues that he was never provided with an initial informal interview to respond to the reasons for revocation in violation of 8 C.F.R. § 241.4(*l*)(1). (*Id.*) Moreover, he alleges that when he presented his OSUP to immigration officers, they disregarded it even though he had been compliant with its terms. (*Id.*) Finally, Mr. Nguyen also argues that it is not even clear that a revocation of his OSUP under the regulations occurred at all, let alone by an authorized official or following a factual determination that would allow a limited designation to a district director because no information on the revocation has been provided. (*Id.*)

Respondents have failed to respond to Petitioner's claims despite opportunity to do so and have declined to present any evidence indicating that Mr. Nguyen received notice of the revocation of his OSUP or violated its terms in any way. Additionally, they fail to provide any information on the internal procedures to evaluate changed circumstances that could justify Mr. Nguyen's

redetention under the regulations or as to whether the appropriate supervisory official made such determinations. Given this, the Court concludes that the revocation of Mr. Nguyen's OSUP was impermissible under the federal regulations. As such, the Court concludes that the proper remedy in Mr. Nguyen's case is not only immediate release from ongoing detention, but also reinstatement of his former OSUP.

**E. Due Process for Third Country Removal**

Finally, Mr. Nguyen also requests that the Court prohibit his removal to any country other than Vietnam without review by an Immigration Judge. (*See* Dkt. 25 at 12.) The Court refrains from considering the merits of Petitioner's argument because his claim is premature. As of the date of this Order, Respondents have not indicated that they are seeking to remove Mr. Nguyen to a country other than Vietnam, or that if another country for removal is identified, that they intend to remove to the country without providing him with notice of the country and an opportunity to present a fear-based claim. Thus, the Court will stay Petitioner's final claim for adjudication at a later date.

**Conclusion**

For the forgoing reasons, Petitioner's Opposed Motion for Leave to Amend under Fed. R. Civ. Pro. 15(a)(2), (Dkt. 24), is GRANTED. Petitioner's First Amended Petition for Writ of Habeas Corpus, (Dkt. 25), is GRANTED IN PART. Respondents' Response to Petitioner's Writ of Habeas Corpus and Motion for Summary Judgment, (Dkt. 10), is DENIED.

Respondents are ORDERED to release Petitioner from custody on or before **January 30, 2026**, on the terms of his former Order of Supervision. The Parties must notify the Court of the status of Petitioner's release by **5 P.M. Central Standard Time (CST) on February 2, 2026**.

Respondents are also ORDERED to notify Petitioner's counsel of the exact location and exact time of his release as soon as practicable and **no less than three hours** before release.

The Court's prior Order, (Dkt. 4), that Respondents notify Petitioner and the Court of any planned removal of Petitioner from the United States, at least five (5) days before any such removal, REMAINS IN PLACE. It is further ORDERED that Petitioner cannot be redetained without a material change in circumstances and that any revocation of Petitioner's OSUP must be made pursuant to the relevant regulations and procedures governing revocation.

IT IS SO ORDERED.

SIGNED this January 28, 2026.

Diana Saldaña
United States District Judge